**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JASON COLLIER,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | CASE NO. 5:25-cv-01742<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Jason Collier seeks judicial review of the final decision of Defendant Commissioner of Social Security denying his application Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter is before the undersigned by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF Doc. 8.) For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

## I. Procedural History

Plaintiff filed his SSI application on June 29, 2023, alleging an onset date of June 29, 2023. (Tr. 21, 94, 226-32.) He alleged disability due to: back, neck, right knee, left ankle, and bilateral shoulder problems; prior broken/fractured wrist, fingers, elbow, collar bone, nose, and ribs; multiple concussions; torn hamstring; and mental health conditions. (Tr. 121, 133, 252.) Mr. Collier's application was denied initially and upon reconsideration (Tr. 117-21, 130-33), and he requested a hearing (Tr. 134-36). After conducting a hearing on Mr. Collier's claims (Tr. 65-93), an Administrative Law Judge ("ALJ") issued a decision denying his application on October 18, 2024, finding him not disabled within the meaning of the Social Security Act since the date

the application was filed (Tr. 18-37). On July 21, 2025, the Appeals Council denied Mr. Collier's request to review the ALJ decision, making the October 18, 2024 decision the final decision of the Commissioner. (Tr. 1-6.)

Mr. Collier filed his Complaint on August 21, 2025, challenging the Commissioner's final decision denying his application for disability benefits. (ECF Doc. 1.) The matter is fully briefed. (ECF Docs. 9 & 10.) Mr. Collier raises one assignment of error in this appeal:

> The Administrative Law Judge's finding that Plaintiff retained the residual functional capacity to perform a reduced range of light work is not supported by substantial evidence.

(ECF Doc. 9, pp. 8-11.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Collier was born in 1974 and was 49 years old on the date the application was filed, making him a younger individual under Social Security Regulations. (Tr. 31, 226.) He has a high school education (Tr. 31, 253) and received special education services while in school (Tr. 327-52).[1] He stopped working on a full-time basis in 2018. (Tr. 78, 252.)

### B. Medical Evidence

#### 1. Relevant Treatment History

Mr. Collier had minimal treatment for his mental health conditions. Prior to the alleged onset date, he saw Heather Frischkorn, NP, for a check up on November 3, 2022. (Tr. 357-60.) He complained of anxiety and hyperactivity. (Tr. 357.) He reported taking Ritalin as a child and said he was interested in taking it again. (*Id.*) He appeared anxious on examination, but was

---

[1] Standard-Binet Intelligence Scale testing performed in 1991 while Mr. Collier was enrolled in high school showed that his general intelligence fell within the average range. (Tr. 328, 333.) However, he remained eligible for special education services due to discrepancies between ability and achievement. (Tr. 328-30.)

alert, oriented, and cooperative. (*Id.*) He had good eye contact, judgment, and insight. (*Id.*) Cognitive function was intact. (*Id.*) His speech was clear. (*Id.*) There were no suicidal ideations, hallucinations, or delusions, and his thought process was logical and goal directed. (*Id.*) NP Frischkorn refilled Mr. Collier's prescription for propranolol for anxiety, noting that the medication was working well, and prescribed atomoxetine for concentration problems. (Tr. 358.) She also referred Mr. Collier to a psychologist for possible ADD/ADHD. (Tr. 359.)

On February 8, 2024, Mr. Collier saw Puran Karra, M.D., regarding his neck and back. (Tr. 487.) Dr. Karra noted that Mr. Collier's anxiety was stable on medication. (*Id.*)

During a July 11, 2024 appointment with Dr. Karra for a checkup, Mr. Collier was alert, oriented, and cooperative with good eye contact. (Tr. 546-47.) His cognitive function was intact. (*Id.*) His prescription for Trazodone for anxiety was refilled. (Tr. 546.)

On August 19, 2024, Mr. Collier returned to Dr. Karra for a routine office visit. (Tr. 553.) He continued to complain of anxiety and noted that he had an evaluation with psychology. (Tr. 555.) On examination, he was alert and oriented and his cognitive function was intact. (Tr. 556.) He was prescribed Lexapro for anxiety. (Tr. 553.)

### 2. Relevant Opinion Evidence

#### i. Consultative Psychological Examination

On December 19, 2023, Mr. Collier presented to Bryan Krabbe, Psy.D., for a consultative psychological examination. (Tr. 480-86.) Mr. Collier reported problems remembering things due to a history of multiple concussions, as well as anxiety and depression. (Tr. 480.) He reported a history of mental health treatment, including counseling and medication, with current medications including propranolol, Trazodone, and an unnamed medication for depression. (Tr. 482.) He reported problems remembering things, focusing, concentrating, and completing tasks

in a timely manner when employed. (*Id.*) He "endorsed common symptoms of depression including poor quality mood, feeling worthless, loss of energy, insomnia, decreased motivation, concentration problems, and social withdrawal." (*Id.*) He also "endorsed symptoms related to anxiety such as restlessness, easily fatigued, difficulty concentrating, irritability, muscle tension, and sleep disturbance" and "symptoms of stress induced panic including rapid heartbeat, tightness of chest, sweating, nausea, and extreme fear of losing control." (*Id.*) He reported a history of suicidal ideation, but denied prior suicide attempts and denied current suicidal or homicidal ideation, plan, or intent. (*Id.*)

On mental status examination, Mr. Collier appeared nervous and showed signs of anxiety, but he was cooperative and rapport was adequately established. (Tr. 483.) Mr. Collier's grooming and hygiene were adequate. (*Id.*) His conversation speed was within normal limits, and he displayed no loose associations, flight of ideas, or delusions. (*Id.*) He had no problems attending to simple instructions. (*Id.*) He was alert, responsive, and oriented to time, place, person, and situation. (*Id.*) He recalled 5 digits forward and, on a slightly more complex task of immediate memory that also assesses attention, he recalled 2 digits backward.[2] (*Id.*) He was able to recall 1 of 3 words after a brief delay and identify the past three presidents. (*Id.*) He showed no problems following conversationally or responding to direct questions. (*Id.*) He could not count backward from 100 by 7s in 30 seconds, and on a slightly simpler task of attention and concentration, he was able to count backward from 20 by 3s in 38 seconds with 3 errors.[3] (*Id.*) He had difficulty calculating division and fractions. (*Id.*) Dr. Krabbe found that Mr. Collier's general level of intelligence appeared to fall below normal limits. (Tr. 483-84.) He

---

[2] Dr. Krabbe noted that the ability to recall 4 digits backward is considered average. (Tr. 483.)

[3] Dr. Krabbe noted that scores of 15 seconds or less suggest adequate attention and concentration. (*Id.*)

found that Mr. Collier's judgment appeared sufficient for him to make decisions affecting his future and "conduct [his] . . . living arrangements efficiently." (Tr. 484.) And he found that Mr. Collier appeared to have adequate insight into his difficulties. (*Id.*)

Based on his examination, Dr. Krabbe diagnosed major depressive disorder, unspecified anxiety disorder, and unspecified alcohol-related disorder, in sustained remission. (Tr. 485.) Dr. Krabbe noted that while Mr. Collier "reported some memory problems, given the absence of measures of memory functioning," he could not "substantiate a diagnosis of Neurocognitive disorder." (*Id.*) Dr. Krabbe provided the following functional assessment:

> **What is your assessment of the claimant's abilities and limitations in understanding, carrying out, and remembering instructions, both one-step and complex?**
>
> The claimant performed below average on a brief abstract reasoning activity, a task to assess difficulty understanding instructions. The claimant performed below average on a brief short term memory activity, a task to assess difficulty remembering instructions. The claimant performed adequately recalling digits forward, a simple structured tasked to assess short-term memory. The claimant was able to converse effectively to complete the evaluation. The claimant reported problems with learning in school and received special education services, which may lead to difficulties acquiring new information in work settings. The claimant reported problems with learning work related tasks including difficulty following directions and acquiring new information.
>
> **What is your assessment of the claimant's abilities and limitations in sustaining concentration and persisting in work-related activity at a reasonable pace?**
>
> The claimant had difficulty completing both serial 7s and serial 3s tasks, which suggests difficulty maintaining attention and focus. The claimant had difficulty recalling digits backwards, a simple structured task to assess attention and concentration. The claimant displayed adequate task persistence when answering questions. The claimant displayed no indication of distraction during the evaluation. The claimant has difficulty remembering appointments and medication. The claimant has symptoms of depression and anxiety that could result in increased worry and a corresponding decrease in attention and concentration. The claimant has a history of problems with attention and concentration in school. The claimant described a history of problems with attention and concentration within work

> environments including difficulty completing tasks in a timely and effective manner.
>
> **What is your assessment of the claimant's abilities and limitations in maintaining effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public?**
>
> The claimant did not describe a significant history of problems with teachers or classmates. The claimant functions within adequate limits of intellectual functioning to understand and respond to supervisor feedback and adequately relate to co-workers. On past work performance, the claimant did not describe significant problems in responding appropriately to supervision and to coworkers in a work setting. The claimant's longest period of employment at one company was 12 years. The claimant interacted appropriately and was pleasant during the evaluation. The claimant has a few friends outside of their family.
>
> **What is your assessment of the claimant's abilities and limitations in dealing with normal pressures in a competitive work setting?**
>
> The claimant endorsed a history of emotional deterioration in response to work pressure. The claimant displayed appropriate responses and affect during the examination when discussing past and current pressures. The claimant has issues with previous drug use. The claimant has symptoms of depression that may compromise their ability to respond to work pressures leading to increased emotional instability and withdraw. The claimant has symptoms of anxiety that may compromise their ability to respond to work pressures leading to increased likelihood of agitation. The claimant has never been psychiatrically hospitalized but is prescribed psychoactive medication.

(Tr. 485-86.)

**ii. Psychological Assessments**

*March 2024 Evaluation*

Laurel Smith, Psy.D., prepared a report on March 3, 2024, relating to her evaluation of Mr. Collier for potential ADHD.[4] (Tr. 497-99.) Mr. Collier stated he was unable to focus on anything and described learning difficulties that he had during school. (Tr. 497.) Mr. Collier was anxious, but had an appropriate affect and was outgoing and friendly. (Tr. 498.) His speech

[4] The March 2024 assessment does not indicate when the evaluation occurred. In Dr. Smith's August 2024 assessment, which is summarized below, she references prior testing from December 2023. (Tr. 563.)

was spontaneous and prosodic but slightly dysfluent. (*Id.*) He was oriented to person and place but mildly disoriented to date. (*Id.*) There was noted distractibility in Mr. Collier's thought process and at times Dr. Smith had to redirect Mr. Collier. (*Id.*) Mr. Collier's remote memory was intact, but testing showed impaired recent memory. (*Id.*) Perceptual disturbances were not evident and there were no ideas of reference. (*Id.*)

Dr. Smith administered a number of tests, including the Montreal Cognitive Assessment, Cognitive Capacity Reading Exam, Wechsler Abbreviated Scale of Intelligence (WAIS), and Visual Memory Subtest of the Kaplan. (*Id.*) On the Montreal Cognitive Assessment, Mr. Collier scored in the significantly impaired range, 17/30. (*Id.*) His ability to complete serial 7s and verbal fluency were significantly impaired, and his sequencing ability was very low. (*Id.*) On the Cognitive Capacity Examination he scored in the significantly impaired range, 12/30. (*Id.*) He showed impairment in multistep directions and difficulty with attention and concentration. (*Id.*) On the WAIS, his scores were as follows: full-scale IQ of 81, perceptual reasoning IQ of 73, verbal comprehension IQ of 86, and processing speed IQ of 55. (*Id.*) Dr. Smith noted that Mr. Collier's processing speed IQ of 55 indicated a slow ability to visually scan and process information. (*Id.*) Mr. Collier's visual memory was in the low range. (*Id.*)

Dr. Smith opined that her evaluation showed inattentive type ADHD. (Tr. 499.) She opined that her evaluation also showed cognitive impairment due to multiple head injuries throughout his life. (*Id.*) She further opined that Mr. Collier's impairments were complicated by a history of learning disabilities in spelling, reading comprehension, and math. (*Id.*) She felt that applying for disability was warranted. (*Id.*)

*August 2024 Evaluation*

Dr. Smith also saw Mr. Collier in July 2024 for a neurocognitive reassessment due to his memory impairment subsequent to multiple concussions, and authored an evaluation report dated August 10, 2024. (Tr. 561-63.) Mr. Collier reported a history of head injuries from working as a professional stuntman and a boxer. (*Id.*) He reported attending special education classes in school due to problems with math and spelling. (*Id.*)

On mental status examination, Mr. Collier was outgoing and gregarious. (*Id.*) His speech was spontaneous, prosodic, and dysfluent. (Tr. 561-62.) He was anxious with an appropriate affect. (Tr. 562.) He showed difficulties with concentration and attention and tended to be easily distracted. (*Id.*) His recall of remote events was intact, but his recall of recent events was impaired. (*Id.*) There were no ideas of reference and perceptions disturbances were denied and not evident. (*Id.*)

Mr. Collier again scored in the significantly impaired range—16/30—on the Montreal Cognitive Assessment.[5] (*Id.*) His verbal fluency and ability to read time were within the below average range. (*Id.*) He had a very low scaled score for immediate recall of detailed stories. (*Id.*) Dr. Smith diagnosed major neurocognitive disorder due to traumatic brain disorder without behavioral disturbance (*id.*), found impairments in executive functioning, memory, information processing, and complex attention, and concluded that his testing "was consistent to the results of the testing in December 2023 noting similar significant level of impairment." (Tr. 563.)

**iii. State Agency Psychological Consultants**

On initial review, state agency psychological consultant Kari Kennedy, Psy.D., completed a Psychiatric Review Technique ("PRT") (Tr. 99) and Mental RFC Assessment (Tr.

[5] His prior score was 17/30. (Tr. 498, 562.)

102-03) on December 26, 2023. In the PRT, Dr. Kennedy considered Listings 12.04 and 12.06. (Tr. 99.) She found that no listing was met and opined that Mr. Collier had: no limitations in his ability to interact with others; mild limitations in his ability to understand, remember, or apply information; and moderate limitations in his ability to concentrate, persist, or maintain pace and adapt or manage oneself. (Tr. 99.) In the Mental RFC Assessment, Dr. Kennedy opined that Mr. Collier: had symptoms of depression and anxiety and difficulty with motivation and some concentration, but remained able to perform routine one-to-three step tasks; and could adapt to a setting where duties are routine and predictable, but should not be expected to adhere to strict time limits or production standards. (Tr. 102-03.)

On reconsideration, state agency psychological consultant Valerie Budervic, Psy.D., completed a PRT (Tr. 110-11) and Mental RFC (Tr. 113-15) on March 23, 2024. In the PRT, Dr. Budervic considered Listings 12.02, 12.04, 12.06, and 12.11, noting additional diagnoses in the record of possible ADHD and neurocognitive deficits due to Mr. Collier's history of multiple head injuries. (Tr. 110.) She found that no listing was met (Tr. 110, 115), opined that Mr. Collier had moderate limitations in his ability to understand, remember, or apply information, and concurred with Dr. Kennedy's other PRT findings as to Mr. Collier functional limitations (*compare* Tr. 110 *with* Tr. 99). In the Mental RFC Assessment, Dr. Budervic opined that: Mr. Collier's psychological condition restricted his capacity for detailed/complex tasks, but he could comprehend and remember simple instructions; he had symptoms of depression and anxiety and difficulty with motivation and some concentration but remained able to perform routine one-to-three step tasks; and he could adapt to a setting where duties are routine and predictable, but he should not be expected to adhere to strict time limits or production standards. (Tr. 114-15.)

### C. Hearing Testimony

Mr. Collier testified at the hearing on September 5, 2024.[6] (Tr. 71-90.) He described Mrs. Smith[7] as his psychologist and stated he saw her two, possibly three times for anxiety and depression. (Tr. 75-76, 87.) He testified that he spoke with his family physician regarding psychiatric medications as instructed to do so by Mrs. Smith and started taking Lexapro two weeks before the hearing for his anxiety. (Tr. 76-77.) He also said he had been taking propranolol for over a year. (Tr. 77.)

## III. Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.
2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

[6] A Vocational Expert also testified at the hearing. (Tr. 90-92.)

[7] This appears to be a reference to Laurel Smith, Psy.D., who is otherwise described herein as "Dr. Smith."

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform other work available in the national economy. *Id.*

## IV. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) (alteration in original). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B. Sole Assignment of Error: The ALJ Properly Considered Dr. Smith's Psychological Evaluations and Adopted a Mental RFC Supported by Substantial Evidence**

In his sole assignment of error, Mr. Collier argues that "the ALJ's analysis of his mental impairments is lacking at both step three and step five of the sequential evaluation process" because "[t]he ALJ failed to give proper weight and consideration to the findings contained in two neurocognitive evaluations performed by Dr. Laurel Smith on March 3, 2024, and August 10, 2024." (ECF Doc. 9, p. 9.)[8] The Commissioner responds that this argument should be rejected because the ALJ properly considered Dr. Smith's evaluations at steps three and five and then adopted a mental RFC that was supported by substantial evidence. (ECF Doc. 10, pp. 6-9.)

**1. Framework for Assessing the RFC and Medical Opinion Evidence**

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess the "residual functional capacity based on all the relevant evidence in [the] case record," *id.*, such as: medical history; medical signs and laboratory findings; effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; symptoms; evidence from attempts to work; need for a structured living environment; and work evaluations, *see* Social Security Ruling (SSR) 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34477 (July 2, 1996).

"The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician," *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Accordingly, an ALJ is "not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Id.* Even

[8] Although Mr. Collier asserts generally in his heading that "[t]he [ALJ]'s finding that [he] retained the [RFC] to perform a reduced range of light work is not supported by substantial evidence" (ECF Doc. p. 8) and summarizes medical evidence relating to his physical impairments in the statement of facts (*id.* at pp. 3-8), Mr. Collier's specific legal arguments are directed solely at the ALJ's analysis of his mental impairments (*id.* at pp. 9-11).

where an opinion was given great weight under prior regulation, the Sixth Circuit held "there [was] no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor [was] the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). But where an ALJ's RFC assessment "conflicts with an opinion from a medical source," he "must explain why the opinion was not adopted." SSR 96–8p, 61 Fed. Reg. at 34478; *see Fleischer*, 774 F. Supp. 2d at 881.

Under applicable regulations, ALJs need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a); *see Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024) (quoting 20 C.F.R. § 404.1520c(a)). However, they must evaluate the "persuasiveness" of medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5)" of the regulation. 20 C.F.R. § 416.920c. Those five factors include supportability, consistency, relationship with the claimant, specialization, and other factors; but the most important factors are supportability and consistency. 20 C.F.R. §§ 416.920c(a), 416.920c(b)(2), 416.920c(c)(1)-(5). ALJs must therefore explain how they considered consistency and supportability but need not explain how they considered other factors. 20 C.F.R. § 416.920c(b)(2).

In reviewing an ALJ's medical opinion analysis, courts must consider whether the ALJ: considered the full record in assessing the persuasiveness of the opinion; appropriately articulated his reasons for finding the opinion unpersuasive; and made findings supported by substantial evidence. *See* 20 C.F.R. § 416.920c (governing how ALJs consider and articulate findings re: medical opinions); 20 C.F.R. § 416.920(e) (findings re: RFCs will be "based on all the relevant medical and other evidence" in the case record); *see also Blakley*, 581 F.3d at 405.

### 2. The ALJ Properly Considered Dr. Smith's Psychological Evaluations and Adopted a Mental RFC Supported by Substantial Evidence

The ALJ found Mr. Collier's mental impairments did not meet or equal a mental listing, and that Mr. Collier had the mental RFC to "understand and remember simple instructions; . . . attend to and carry out routine, repetitive tasks, but not at a production rate pace; and . . . adapt to infrequent changes in the work setting or duties that are explained or demonstrated in advance." (Tr. 24-27.) In challenging these findings, Mr. Collier asserts that the ALJ did not "give proper weight and consideration" to the findings in Dr. Smith's March and August 2024 psychological evaluations. (ECF Doc. 9, pp. 9-10.) More specifically, he argues: (1) the ALJ "essentially disregard[ed] the two evaluations of Dr. Smith and primarily rel[ied] on [consultative examiner] Dr. Krabbe's report" (*id.* at p. 10); and (2) "the level of disability found by Dr. Smith's testing is directly contrary to the moderate or less findings made by the ALJ" at Step Three and in the mental RFC (*id.* at pp. 10-11).[9] The Court will address these arguments in turn.

In response to Mr. Collier's first argument—that the ALJ did not give proper weight to Dr. Smith's reports because he "primarily rel[ied] on" Dr. Krabbe's consultative examination at Step Three and in assessing the RFC (ECF Doc. 9, p. 10)—the Commissioner argues that the ALJ properly and explicitly considered Dr. Smith's reports at Step Three, when evaluating the opinion evidence, and "when evaluating the evidence and assessing his RFC" (ECF Doc. 10, p. 6). To the extent the ALJ did not discuss every finding in Dr. Smith's reports, the Commissioner notes the Sixth Circuit has held that an ALJ "'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (*Id.* (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (per curiam)).)

---

[9] Mr. Collier's stated arguments have been consolidated for clarity. Some arguments that Mr. Collier identified separately in his brief are more effectively discussed in the context of the two primary arguments identified herein.

The Court agrees with the Commissioner that the ALJ adequately discussed and considered the findings in Dr. Smith's evaluations at Step Three and when assessing Mr. Collier's mental RFC. First, the ALJ noted and discussed the IQ test results in Dr. Smith's March 2024 assessment when evaluating Mr. Collier's impairments at Step Three, stating:

> During the claimant's psychological evaluation with Dr. Smith in March of 2023, he took the Wechsler Abbreviated Scale of Intelligence (WAIS) and received a full-scale IQ of 81, a perceptual reasoning IQ was 73, a verbal comprehension IQ of 86, and a processing speed IQ of 55 (Exhibit 9F, pg. 2). Although some of the claimant's sub-IQ scores fall within the above criteria, he does not have two or more marked limitations in the "paragraph B" criteria listed above. Therefore, listing 12.05 is not met.

(Tr. 27.)[10] Next, the ALJ outlined the reported history and examination findings set forth in Dr. Smith's August 2024 psychological assessment, explaining:

> In August of 2024, the claimant presented to Dr. Smith for a psychological assessment. At this time, he reported that he had a history of head injuries from working as a professional stuntman and a boxer, and he was in special education classes while in school due to problems with math and spelling (Exhibit 16F, pg. 1). A mental status examination performed at this time revealed that the claimant was alert and oriented to all spheres, his mood was anxious, with an appropriate affect, his verbal fluency was below average, he had below average ability to read time, and the episodic memory associative learning task resulted in a very low sealed score of four in his immediate recall of detailed stories (Exhibit 16F, pg. 2).

(Tr. 29.) The ALJ then considered Dr. Smith's subjective reports and examination findings again when addressing the consistency of Mr. Collier's mental health allegations, stating:

> Regarding the consistency of the claimant's mental health allegations, he had a limited treatment history since the alleged onset date, he admitted seeing a positive response to his psychotropic medications, without significant side effects, and there is no evidence of psychiatric hospitalization in the record. Such absence of documentation of ongoing treatment is inconsistent, and it seriously undermines allegations of disabling, or even severe, limitations of function, lasting twelve months in duration, and despite treatment (20 CFR 404.1520(a)(4)(ii) and

[10] Plaintiff's offhand comment that Listing 12.02 was a more appropriate consideration than Listing 12.05 (ECF Doc. 9, p. 10, n.1) does not change the above analysis. Not only was the argument underdeveloped and accordingly waived, it also lacks merit as the ALJ explicitly considered Listing 12.02 (Tr. 24). Further, the record reflects that state agency psychological consultant Dr. Budervic found Mr. Collier's impairments did not meet or equal a listing, including Listing 12.02 (Tr. 115), after reviewing Dr. Smith's March 2024 assessment and testing (Tr. 109).

> 404.1509). Additionally, the claimant reported mostly mild to moderate level symptoms to providers such as Dr. Smith and other sources, and during his psychological consultative examination with Dr. Krabbe, without evidence of hallucinations, delusions, obsessions, compulsions, current suicidal/homicidal ideation, or other serious issues (Exhibit 7F; 9F; 16F). Thus, there are no indications in the medical record of limitations beyond the performance of light level work with the non-exertional restrictions listed above.

(*Id.* (emphasis added).) Finally, the ALJ assessed the persuasiveness of Dr. Smith's limited opinion findings in the two psychological evaluations, explaining:

> The undersigned finds the ADHD evaluation and the psychological assessment of Dr. Smith somewhat persuasive (Exhibit 9F; 16F). In Dr. Smith's ADHD evaluation, she concluded that the claimant has mental health issues such as difficulty maintaining attention and concentration, difficulty starting and completing tasks, and can be easily distracted. In Dr. Smith's psychological assessment, she concluded that due to a history of cognitive impairment, the claimant has limitations in executive functioning, memory, information processing, and complex attention. Although not stated in specific, work-related limitations, these restrictions are fully accommodated in the above residual functional capacity, such as the ability to attend to and carry out routine, repetitive tasks, but not at a production rate pace, and no more than infrequent workplace changes.

(*Id.* (emphasis added).) Thus, the record reflects that the ALJ explicitly considered the subjective reports, clinical test results, mental status examination findings, and medical opinions outlined in Dr. Smith's two evaluations in support of his Step Three and mental RFC findings.

Plaintiff argues that the ALJ's discussion was insufficient because he only referenced Dr. Smith's test results in "general terms" and "failed to set forth the specific results of the testing[.]" (ECF Doc. 9, p. 11.) But the ALJ explicitly considered the IQ and sub-IQ scores in Dr. Smith's evaluation at Step Three (Tr. 27), and discussed Dr. Smith's specific mental status examination findings in assessing the mental RFC (Tr. 29). As to the other findings outlined in Dr. Smith's reports, the Sixth Circuit has explained that ALJs are not required to discuss all of the evidence, only to consider the evidence as a whole and reach a reasoned conclusion. *See Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky*, 167 F.

App'x at 507-08). Here, Plaintiff has neither shown nor explained how the additional clinical findings or test results in Dr. Smith's reports have significance beyond what is reflected in the IQ scores and examination findings that the ALJ did discuss. Indeed, aside from general assertions that a battery of tests found a "significant impairment" and the ALJ did not provide a sufficiently detailed analysis of Dr. Smith's findings (ECF Doc. 9, pp. 10-11), Mr. Collier does not identify what specific findings the ALJ should have discussed, and does not explain how those findings would have required a different result at Step Three or in the mental RFC.

Turning to Mr. Collier's second argument—that "the level of disability found by Dr. Smith's testing is directly contrary to the moderate or less findings made by the ALJ" at Step Three and in his mental RFC findings (ECF Doc. 9, pp. 10-11)—the Commissioner asserts this argument should be rejected because: (1) state agency medical consultant Dr. Budervic "considered Dr. Smith's reports and reasonably concluded that Plaintiff had no more than moderate limitations in the four functional areas"; (2) a finding of no more than moderate limitations was also consistent with Dr. Krabbe's consultative examination findings; and (3) Plaintiff has not cited any authority showing that test results such as Mr. Collier's processing score of 55 are "per se disabling" (ECF Doc. 10, p. 8). The Court agrees.

Beyond noting that some of Dr. Smith's test results found "significant impairment," Mr. Collier does not offer authority or explanation to support his assertion that Dr. Smith's test results were "directly contrary" to the ALJ's Step Three and RFC findings. (*See* ECF Doc. 9, pp. 10-11.) The Court is also unaware of any such authority. For example, the Court notes that Mr. Collier's full scale IQ score of 81 is above both of the available measures of "significantly subaverage general intellectual functioning" under paragraph B(1) of Listing 12.05, despite his lower processing score of 55. (*See* Tr. 26-27.) Further, the record affirmatively shows that state

agency psychological consultant Dr. Budervic reviewed the findings in Dr. Smith's March 2024 report, including the FSIQ score and sub-scores, and still concluded that Mr. Collier had no more than moderate limitations in mental functioning. (*See* Tr. 109-11, 114-15.) Thus, the record contained specific medical opinion evidence supporting a finding that Dr. Smith's testing was consistent with no more than moderate limitations, and Plaintiff has not identified contrary evidence to establish that such a finding lacked the support of substantial evidence.

The Court also observes that Dr. Smith's medical opinion findings do not require or clearly support a finding that the test results set out in her evaluations were "directly contrary" to a finding of only moderate limitations in mental functioning. In her March 2024 report, Dr. Smith found Mr. Collier had ADHD and cognitive impairment subsequent to head injuries, complicated by a history of learning disability, with scores "in the significant range for inattention, which included difficulty maintaining attention, difficulty concentrating, easily distractible, difficulty completing tasks, difficulty starting tasks, and becoming easily distracted by external stimuli." (Tr. 499.) In her August 2024 report, Dr. Smith concluded Mr. Collier had cognitive impairment due to major neurocognitive disorder, with impairments in "executive functioning, memory, slowed information processing, and complex attention." (Tr. 562-63.) The ALJ acknowledged both opinions, but correctly observed that the described limitations were not "stated in specific, work-related limitations"; he then concluded that the stated restrictions were fully accommodated in the mental RFC. (Tr. 30.) Mr. Collier has not shown that this finding lacked the support of substantial evidence, nor has he shown that Dr. Smith's opinions and findings required the ALJ to find more than moderate functional limitations.

Even if substantial evidence supports Plaintiff's argument that Dr. Smith's findings show greater limitations in mental functioning, this Court cannot overturn the ALJ's finding to the

contrary "so long as substantial evidence also support[ed] the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477; *Blakley*, 581 F.3d at 406. Here, Mr. Collier has not shown that the ALJ's Step Three or mental RFC findings lacked the support of substantial evidence.

For the reasons set forth above, the Court concludes that Mr. Collier has not met his burden to show that the ALJ's analysis of Dr. Smith's assessments is insufficient, or that the ALJ's Step Three or mental RFC findings lacked the support of substantial evidence.

Accordingly, the Court finds the sole assignment of error lacks merit.

## V. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision.

September 25, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge